## O. W. ENGELBERT v. C. E. TUTTLE.[1]

April 8, 1932.

No. 28,800.

[1]Reported in 242 N. W. 425.

*John A. Burns* and *Walter T. Ryan,* for appellant.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *R. R. Barry,* for respondent.

WILSON, C. J.

The contestant has appealed from a judgment confirming the election of respondent to the office of register of deeds in Dakota county.

Tuttle has been register of deeds for about 20 years. In the last election he defeated Engelbert, his opponent, the contestant.

In May, 1930, Tuttle saw two carpenters working across the street from his home. He asked them to bring their ladder and to come to his house and put on his screens. He took them into the basement and showed them the screens. He gave each a glass of wine. Nothing was said then or later about his candidacy for office.

In July, 1930, he took two men into his home to show them his electric ice box and his oil burning heater. The ice box contained some beer. He gave each of the men a bottle of beer. There was no talk about his candidacy for office.

The court found as facts that such dispensing of these drinks amounted to mere hospitality and was not done by Mr. Tuttle to influence or with the intention of influencing voters in his behalf. The weight of authority seems to be that laws regulating or prohibiting the sale of intoxicating liquor are aimed at the traffic in liquor rather than the friendly acts of hospitality with no intent to evade the law. 33 C. J. 593, § 215, and numerous cases there cited; 15 R. C. L. 350, § 113; People v. Peterson, 156 Mich. 235, 120 N. W. 570, 21 L.R.A.(N.S.) 134; People v. Barbera (City Mag. Ct.) 214 N. Y. S. 778. The question however is an open one in Minnesota.

State v. McCarthy, 159 Minn. 48, 197 N. W. 961. We leave it open. The absence of a purpose to influence votes distinguishes the instant case from In re Election Contest of Christian, 170 Minn. 465, 213 N. W. 48. From the standpoint of the corrupt practices act, the purpose of influencing voters is the poison at which the law is directed; and in the absence of such purpose, as found by the trial court, the gift of the liquor to the extent stated was not a violation of the corrupt practices act.

■ The charge that Tuttle played a game of chance at a church bazaar and gave the money to the church to influence voters is not sustained by the proof. His wife, not he, did win a prize, supposed to be a five dollar gold piece. The church sent Mrs. Tuttle a check, which with her permission Mr. Tuttle returned and requested that the transaction have no publicity as people might think it was done for political purposes. The party put it back in the church treasury and told no one. The evidence supports the finding that this accusation is not proved.

■ It has for many years been the custom among the people of Dakota county to hold showers in honor of young people about to be married. Contestee and his wife have made it a practice to attend such showers to which they were invited. It has always been their practice to present gifts on such occasions. During the campaign they were invited to and attended four of such showers, and they presented a gift to the bride on each of such occasions. Each gift so presented was accompanied by a card signed by contestee and his wife expressing congratulations, but the campaign card of such contestee did not accompany any of such gifts, as the contestant has charged. The gifts so presented were similar with respect to character and cost to those given by other invited guests. The court found that the charge of contestant that said contestee presented such gifts at such showers for the purpose and with the intent of influencing voters was not sustained by the evidence, and we are of the opinion that the evidence sustains such finding.

■ During the campaign the contestee mailed to a limited number of his friends, members of lodges of which he was a member, a blue card reading as follows:

"Hastings, Minn. Oct. 20, 1930.

"Dear Friend:

"I am taking the liberty of sending you a few of my campaign cards and I will consider it a great favor if you will hand them out to your immediate friends and neighbors and ask them to give me their support at the polls on November 4th.

"It is impossible for me to see every one, so if you can do this for me, it will be greatly appreciated.

"Yours truly,

"C. E. TUTTLE, Register of Deeds."

Each' of said blue cards so mailed was accompanied by one or more of contestee's campaign cards reading as follows:

"RE-ELECT

"(PICTURE)

"C. E. TUTTLE, Register of Deeds
"Dakota County
"'He is always on the job'

"Prepared by and issued for C. E. Tuttle, Hastings, Minn.

---

"ASK ANYBODY."

The campaign cards so enclosed were prepared in form in compliance with law. The claim is that the blue card did not meet the technical requirements of the law, upon the claim that it had to be prepared with the same formality as the campaign card. We are of the opinion that this contention is not sound. The blue card was in fact a letter. Had it been written on a letterhead or on ordinary stationery, no one could have questioned its validity; and the fact that it was printed on a card does not change its substance or purpose. This transaction in no way violated the corrupt practices act.

■ During the campaign the contestant's wife and her sister owned the Gardner Hotel in the city of Hastings in Dakota county. The contestant charges that the contestee falsely stated that the contestant was the owner of the hotel, and it is also argued that he also stated in effect that the contestant was a man of means and

did not need and ought not to aspire to the office. The trial court found that these charges were substantially untrue.

■ During the campaign the contestee carried political advertisements in several newspapers circulating quite generally throughout the county. Most of these advertisements contained a large picture of Mr. Tuttle, and above the picture and across the top of the advertisement were these words:

"Political advertisement, prepared by and for C. E. Tuttle, Hastings, Minn., for which the regular advertising rate will be paid."

This accompanying statement failed to meet the requirement of the corrupt.practices act. G. S. 1923 (1 Mason, 1927) § 539, provides that the statement accompanying such an advertisement shall include "a statement at the head of said matter of the amount paid or to be paid therefor." The purpose of this language in the statute is not limited to the purpose of showing that it is a paid advertisement, but is also to inform the voting public, which is interested, as to the extent to which the candidate is indulging in such expenditure of money. It provides a means for a contestant or other person to obtain some definite knowledge as to the amount of such expenditure without waiting for or relying upon the filed statement of the candidate. The language used in the statute is simple and clear. It calls for a "statement * * * of the amount paid." This has a definite meaning. It means that the amount should be disclosed in dollars and cents by a reading of the statement. Upon any other theory it is meaningless. If it in no way adds to what one would learn by reading the filed statement of the candidate, it would be without purpose. If the intention of the legislature was solely to identify the matter as an advertisement to distinguish it from editorial support, gratuitous or otherwise, it would merely have required the article to be labeled as an advertisement or a paid advertisement. Candidates naturally assume that the newspaper men know what the law requires and will not publish anything in conflict with the statute, but the language of the statute makes such an omission also an act of the candidate; and we here find that the contestee failed to comply with this requirement of

the corrupt practices act. We do not consider the consequences under G. S. 1923 (1 Mason, 1927) § 578.

However we are of the opinion that this violation of law on the part of Mr. Tuttle was trivial, unimportant, and limited in character, within the meaning of G. S. 1923 (1 Mason, 1927) § 571. We may also add that we did not discuss at length under subdivision 5 the testimony which tended to support the contestant's claim that Mr. Tuttle had made the statements therein imputed to him, because we are of the opinion that had the evidence sustained the finding that such statements were made they too were trivial, unimportant, and limited in character.

Affirmed.

OLSEN, J. (concurring in the result).

I concur in the result but not in all that is said in subdivision 6 of the opinion. It seems to me that where the advertisement states it is to be paid for at regular advertising rates there is a substantial compliance with the statute. The statement points out that the matter is published as an advertisement at regular rates. The purpose of the statute, I believe, is to prevent candidates from having inserted in newspapers editorial commendations and articles, paid for by them, which appear to be not paid advertisements but opinions or recommendations in their favor coming from the editor or publisher of the newspaper; in other words, to prevent a candidate from purchasing the editorial support of the newspaper without disclosing that it is paid for. The important fact is to disclose that the published matter is paid advertising. The exact amount paid is not important. That is taken care of by requiring the candidate to make itemized reports of all expenditures paid or incurred. We are dealing here with a highly penal statute, and violation thereof must be clearly shown.

DIBELL, J.

I concur in the views of Mr. Justice Olsen.