## RALPH J. EFFERTZ v. WILLIAM SCHIMELPFENIG.[1]

April 5, 1940.

No. 32,329.

*John J. Fahey* and *W. F. Odell,* for appellant.
*Hanson & Willcox,* for respondent.

JULIUS J. OLSON, JUSTICE.

At the 1938 general election, contestant and contestee were opposing candidates for the office of county auditor of Carver county. Contestee received a substantial majority (4,649 to 3,437) of the votes cast and was declared elected. In this proceeding contestant

[1]Reported in 291 N. W. 286.

claims that his opponent had violated the corrupt practices act and for that reason should be ousted, and that he (contestant) should be adjudged "the one who was elected" to that office.

The court made extensive findings and, based upon these, concluded that judgment should be entered declaring contestee's election "null and void" and that he be "ousted from said office forthwith, and said office be declared vacant." Contestee's blended motion for amended findings or a new trial was denied, and he appeals.

The sections of the act deemed to have been violated, so far as here material, read (1 Mason Minn. St. 1927, §§ 544 and 591):

"544. Campaign literature must bear names and addresses— Any person * * * who shall publish, issue or circulate, * * * any literature or any publication *tending to influence voting at any* primary or *election* which fails to bear on the face thereof the name and address of the author, the name and address of the candidate in whose behalf the same is published, * * * and any person * * * who shall knowingly make or publish or cause to be published, any false statement in relation to any candidate * * * to be voted upon, which statement is *intended to or tends to affect any voting at any* * * * *election,* shall be guilty of a misdemeanor; * * *."

"591. Defamatory circulars, etc.—Every person who writes, prints, posts, or distributes * * * any circular, poster, or other written or printed matter, *which is designed or tends to injure or defeat any candidate for* nomination or *election to a public office* by reflecting on his personal or political character or acts, * * * shall be guilty of a gross misdemeanor." (Italics supplied.)

The claimed offending writing is a letter claimed by contestant, and found by the court, to emanate from defendant, contestant's exhibit LA, which reads:

"Chaska, Minnesota October 10th
"Ralph Effertz: I want to tell you that I am all done with

you. I am very much disgusted the way you acted and carried on. You seemed more of a fool like than I ever believed one could be. That letter stuff that you are trying now is surely killing you off good and hard. Why did you ever start anything so foolish. Schimelpfenig knows all about it now and he tells the people what you are trying to do and then he shows them the real copy of the letter that you tried to show around here. I got my nose burned and I am done with anything as dirty as that. I am not going to talk for you and support you any longer as the 'cat now was let out of the sack' as they say. If you had not started this dirty stuff I would have worked for you on the sly but now I got to be careful what I do and say, and this will spoil your chances of winning which would have been slim enough without it. They all laugh at you trying to pull such a foolish stunt.

"Why did you ever try to get me to help. You should have known better. Guess you might just as well lay down now as they are laughing and joking about your stunts.

"Do not bother me any longer as I am not in it and do not want to see you and me together for fear that I may be put on the carpet like I was a short time ago.

"[Signed]  Victor"

The "dirty stuff" referred to is another letter written by contestee to the *Lutheran News,* a photostatic copy of which was used by contestant during the campaign, contestant's exhibit LD, which reads:

"Chaska, Minn., July 10, 1938.

"The Lutheran News,

"Mpls., Minn.

"Sirs:

"Your Church paper 'The Lutheran News' was promiscuously distributed in the different Lutheran Churches in Carver County, including the Chaska church of which I am a member and a trustee.

"In the June copy, political announcements appeared, particularly of Farmer Labor candidates. In the August number, we are

told, there will be other political announcements and advertising, including those of local county candidates quite a few of whom are Catholics. Mr. Goodnow was at the courthouse here last week soliciting these 'ads' at $10 each.

"We, the trustees of the local church, and also others including our Rev. Otto Kohn, talked this matter over and we came to a unanimous conclusion that this must not be done as there is grave danger of getting politics and church matters mixed up.

"It is up to you to see that none of this political thrash will be allowed hereafter, and we demand that you inform Mr. Goodnow of Excelsior (also soliciting for the 'Patriot' at Waconia) that he discontinue his soliciting in the future and return all contributions taken so far to the donators.

"If any more political announcements will appear in your paper, we demand that no copies be sent to any of the Carver county churches, as they will not be distributed but dumped in the furnaces.

"Mr. Goodnow approached me last week, seeking my contribution, but I told him that it was nothing proper to appear in a church paper. I hold it is nothing but newspaper racketeering.

"[Signed] Wm. Schimelpfenig
"County Auditor, Carver Co., &
Treas. St. John's Luth. Church
of Chaska, Minn."

The court thought that because the instrument first quoted "did not contain the name and address of the author nor the name and address of the candidate in whose behalf the same was published" it was violative of § 544; that "the purpose and object, and tendency, among other purposes, objects, and tendencies, of composing," it "was to convey to and impress" upon contestant that he "was making a mistake in his campaign when he showed the photostatic copy of the said letter written to the *Lutheran News*"; that "the purpose, object and tendency of issuing said letter was also to prevail upon contestant not to show the photostatic copy of said letter to anyone; that contestee believed that

if the photostatic copy was not shown" to the voters by his oppo-
nent his "morale and confidence * * * would be weakened,"
and that thereby the "voters would not be influenced * * *
to vote against contestee and contestee would be elected"; that
thereby contestee knowingly made and published "a false state-
ment in relation to his opponent" in that "he did by innuendo,
convey the impression that his opponent, * * * was dishonest
and unfit for office because he did not show the true copy of said
letter" to the voters; that the letter was "written, mailed, issued
and circulated not in good faith, but for the purpose, object, and
tendency of influencing and affecting votes and to injure and
defeat" his opponent. This, so the court thought, was contrary
to both sections of the statute to which we have referred. It is
appropriate to remark that contestee denied writing the letter to
contestant and denied having any knowledge of it. However, for
our purpose, we shall assume that he did write and mail it and
that he intended the evil result condemned by the court.

The testimony is that this letter (exhibit LA) came by mail to
contestant's home on October 16 in an envelope addressed to him.
His wife opened the letter, read its contents, and handed it to
her husband when he later arrived at the house. There is no
proof that this letter or anything like it was mailed to any other
voter of the county, or that any voter, except contestant and wife,
ever knew anything about it. Clearly, then, no one else was or
could be influenced by it. Even if it be conceded that the letter,
if circulated or distributed amongst the voters, would be violative
of the mentioned sections of our act, can it be said to have had
anything to do with the election? By way of answer to this per-
tinent inquiry by contestee, contestant says that the "natural
tendency would be to demoralize, to make nervous, to set the op-
position on a fruitless search (so contestee hoped) in an en-
deavor to find the author * * * and to make contestant waste
valuable time, so that he could not campaign" as successfully as
he otherwise might have done; that he "might have been so fright-

ened as to quit campaigning altogether." There is, however, no testimony to sustain these suppositions. They are but guesses.

1. "One purpose of the corrupt practices act is to prevent a candidate from obtaining a nomination or election to office by employing false statements or corrupt means to *influence voters* during a campaign." (Italics supplied.) Flaten v. Kvale, 146 Minn. 463, 466, 179 N. W. 213, 215. Likewise, in Hawley v. Wallace, 137 Minn. 183, 184, 163 N. W. 127, 128, it was held that "the publication of any false statement in relation to a candidate which is intended to *affect voting at any election* or tends to do so" is what the act prohibits. (Italics supplied.) "From the standpoint of the corrupt practices act, *the purpose of* [unlawfully] *influencing voters is the poison at which the law is directed.*" Absent that purpose, there is "not a violation" of the act. Engelbert v. Tuttle, 185 Minn. 608, 610, 242 N. W. 425, 426. (Italics supplied.) So, in the case before us, as the alleged offending letter was not distributed or circulated amongst the voters, there can be no foundation for a claim that there was a "material," or any other, "influence" by virtue whereof contestant lost to his opponent. It may well be doubted that this foolish tirade can be dignified as "any literature or any publication tending to influence voting." 1 Mason Minn. St. 1927, § 544. *Cf.* (concurring opinion by Mr. Justice Holt) Miske v. Fischer, 193 Minn. 514, 516, 259 N. W. 18.

2. Upon this record we find nothing to sustain the result reached by the court. Even if it be granted that contestee's statements in his letter to contestant were "deliberate" and "serious" it cannot be said that these in any "material" degree contributed to contestant's defeat, 1 Mason Minn. St. 1927, § 570, for that section "requires as ground of successful contest 'deliberate, serious, and *material* violation of the provisions of this act or of any other provisions of law relating to nominations and elections.'" Dart v. Erickson, 188 Minn. 313, 316, 248 N. W. 706, 708.

Order reversed with direction to dismiss the contest.

So ordered.