HENRY SWENO v. M. E. GUTCHES.[1]

February 16, 1934.

No. 29,893.

[1]Reported in 252 N. W. 839.

*J. N. Peterson* and *Phillips & Sherwood,* for contestant-appellant.
*William M. Wood* and *Mark & Barron,* for contestee-respondent.

*STONE, Justice.*

In this statutory election contest the stake is the office of county commissioner for the fifth commissioner district in Todd county. The contestee, Mr. Gutches, was declared elected by the canvassing board, but his margin of victory was only three votes. The inspectors appointed, following the institution of the contest proceedings by Mr. Sweno, upon their recount reversed the canvassing board and gave contestant a margin of one. The decision below, in its turn, reversed that conclusion, giving Gutches a majority of two. The findings of fact award him 651 votes against 649 for contestant, Sweno. The latter appeals from the judgment entered after the denial of his motion for a new trial.

■ On the evening of election day, Mr. Gutches, driving along the road in his automobile, picked up two or three voters, all of them his neighbors, and carried them to the polls. That is complained of as a violation of statute. 1 Mason Minn. St. 1927, § 547. But on the facts it was found to have been so "trivial, unimportant or limited in character" as not to have affected the result. 1 Mason Minn. St. 1927, § 571. That finding will not be disturbed on appeal. It was not the intention of the legislature to deprive a successful candidate of his office because of mere courtesy extended by him to three neighbors. The finding below must stand, under the rule of Engelbert v. Tuttle, 185 Minn. 608, 242 N. W. 425, and Dart v. Erickson, 188 Minn. 313, 248 N. W. 706.

■ The findings count for contestee-respondent the votes of two ladies, neither of whom required assistance in ballot marking because of illiteracy or physical disability. But each of them was accompanied into the voting booth by her husband. Each admitted having been assisted by him in marking the state ballot. Both testified also, with some contradiction and appearance of afterthought,

that such aid did not extend to the county ballot, which carried the names of the parties to this contest. Because of that testimony, both votes, admittedly cast for Gutches, were counted in his favor by the decision below. They should have been rejected.

1 Mason Minn. St. 1927, § 429, reads thus:

"No voter shall divulge to any one within the polling place the name of any candidate for whom he intends to vote or has voted, nor shall he ask for or receive assistance from any one within the polling place in the preparation of his ballot, except as hereinbefore provided. When any voter, after having marked his ballot, shows it to any one except as hereinbefore provided, the judges shall refuse to receive such ballot, but shall place it among the spoiled ballots, and, when such showing has clearly been intentional, no other ballot shall be delivered to such voter."

Provision is made by § 427 that any voter, stating *on oath* that he cannot read English or is physically unable to mark his ballot, may get help from one of the judges; or, if he prefers, he may call to his aid "any voter of the same district." In Nelson v. Bullard, 155 Minn. 419, 194 N. W. 308, we held that the requirement that a voter getting aid other than from one of the election judges must take the oath specified is mandatory; and that a ballot cast by one so assisted without the preliminary oath is invalid. That decision went the other way because the involved votes were cast by voters not only not needing assistance, but also not actually having any.

The instant case may be close to the line, but it is distinctly on the wrong side. Each voter was supplied with and took into the voting booth the state and county ballots and a third on proposed constitutional amendments. The goal of our law is a ballot the secrecy of which will be made as complete and inviolable as practically possible. To permit a voter having unauthorized assistance, by his own subsequent version of the affair, either to sustain all of his ballots, or to invalidate some and sustain others, would make worthless the precaution of the statute. The statutory invalidity of a ballot, because of noncompliance with a mandatory condition precedent, ought not to be escapable because of the subsequent testi-

mony of the voter as to what did or did not take place in the secrecy of the voting booth. The only sure way of enforcing the law is to nullify, as it intends, any and all ballots cast in contravention of its plain provisions. Here the violation consisted of two voters getting assistance without the preliminary oath. The two dead ballots were not resurrected by testimony that the assistance, prohibited but rendered, did not extend to one of the ballots, that one being just as much open to inspection and fixing by the assistant voter as the others. The two votes in question must be deducted from the Gutches votes as figured below, thereby reducing it to 649, the same number counted for Sweno.

■ There is a finding as to a supposed lost ballot in the town of West Union, which, as far as we are able to ascertain, is not supported by evidence. The finding is that:

"One vote for contestee [Gutches] was lost or mislaid between the time when the votes were canvassed by the election judges in said town and the time when the votes were canvassed by the inspectors appointed by the court, and that said ballot should be and the same is hereby found to have been cast for contestee."

The undisputed evidence is that the supposed missing ballot was found with those returned to the county auditor, to whom was returned the same number he sent out, 201. The missing ballot was found, folded, but with the unused ballots returned to the auditor: It was blank—had not been used. There is no testimony otherwise that, because of any *missing* ballot, either party lost a vote in West Union. All ballots from that precinct were examined by the inspectors and before the court. One of the inspectors, Mr. Hendrickson, did testify by way of conclusion on cross-examination, that "Mr. Gutches * * * lost one vote in that transaction due to the fact that the ballot was not present" when return was made to the auditor. But the record shows that conclusion to have been plain error. There is no question otherwise as to the West Union vote; and no evidence that a ballot for Gutches was lost. The blank ballot aside, and as a result of a correct count of the West Union vote, Gutches did lose one vote in that town. Obviously that is what the witness Hendrickson had in mind when he said that be-

cause of the West Union "transaction" Gutches lost one vote. Counting for Gutches the ballot in question was error. It must be deducted. Hence his total vote was only 648, whereas the Sweno vote is 649.

The judgment must be reversed; the findings of fact and conclusions of law amended conformably to the conclusions herein expressed; and judgment ordered for contestant, appellant here.

So ordered.

