## CAMERON A. MARSHALL v. THOMAS STEPKA.

108 N. W. (2d) 614.

March 24, 1961—No. 38,343.

554

*Robert J. Breunig* and *C. L. Nelson,* for appellant.
*LeVander, Gillen & Miller,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an election contest arising out of the November 8, 1960, election for county commissioner of the fifth district in Scott County. Cameron A. Marshall and Thomas Stepka were candidates for the office described. The official vote was 741 ballots for Stepka and 739 ballots for Marshall. Inspectors appointed in the contest reported to the district court that their examination revealed that each candidate had 730 uncontested ballots; and that an additional 21 ballots were cast in the election and were disputed. Of the latter, 12 were claimed

by Stepka, and 9 by Marshall. After trial of the contest, the court found that only 14 of the disputed ballots were valid. Of this 14, 6 were allowed for Stepka, and 8 were allowed for Marshall. The court thereupon determined that the election results were 738 votes for Marshall and 736 for Stepka.

Of the 7 ballots found invalid, it is not disputed that at least 4 of these had been clearly marked for Stepka; and that 1 had been clearly marked for Marshall. The remaining 2 were also claimed by Stepka.[1] As to the 5 ballots[2] which were clearly marked as indicated, the court determined that they were invalid because of certain figures written on the reverse side thereof as follows:

1 ballot, the figure 30
1 ballot, the figure 300
1 ballot, the figure 64
1 ballot, the figures 29, 62, 91
1 ballot, the figure 88

With respect to such figures, William Thalhuber, one of the election judges of New Market Township where these 5 ballots were cast, testified that he had been an election judge of New Market Township since 1951; that after all votes had been cast and the polls closed, all votes for commissioner in this township had been counted on two occasions; that during the second count the ballots had first been separated into two piles, one for Stepka and one for Marshall; that after this each of the three judges took a portion of the piles and

---

[1]All of the 21 disputed ballots disappeared subsequent to the trial and do not form a part of the record. Accordingly, there is nothing here whereby this court can review the evidence upon which the trial court found that 2 of these ballots were invalid. As to 5 of them, however, testimony submitted with reference thereto is such that the evidence upon which the court found them defective may be reviewed here.

[2]Of the 8 ballots allowed Marshall, 4 are challenged by Stepka because of the absence of any election judges' initials thereon as required by Minn. St. 204.05. However, our conclusion with respect to 5 of the 7 ballots which were disallowed as above described and which give Stepka a majority of 1 regardless of the 4 challenged Marshall ballots makes it unnecessary for us to pass upon the issue with respect thereto.

started counting; that he had used a ballpoint pen in tabulating such ballots; that the figures described were written upon the reverse side of the top ballots of the various piles; that the figure 30 represented the total vote of one such pile; that the figure 88 represented the total vote of one such pile; that the figure 300 on the reverse side of one ballot and the figure 64 on the reverse side of another ballot represented the total Stepka vote of 364 votes in this township; that the figures 29 and 62 with their total of 91 on the reverse side of one such ballot represented the Marshall total of 91 votes in this township. These totals corresponded with the returns from this township. ·

In his direct examination, when asked if these figures were in his writing, the witness testified as follows:

"A.   It looks like my writing.

"Q.   And does it look as though it was made by your ball point pen?

"A.   Yes.

*   *   *   *   *

"A.   Yes, I am quite sure that is mine.

"Q.   And was that made at the same time and for the same purpose of designating the number of ballots in a pile after the election?

"A.   Yes, sir.

"Q.   Now, all of those marks that you have testified to, were they placed on there during the counting and after the voting?

"A.   Yes."

On cross-examination when asked: "Mr. Thalhuber, * * * you think you wrote all of these figures on all of these * * * ballots, that all of them are in your handwriting?" he answered: "I think so. I wouldn't be positive about it, but I think it's mine. That is a common practice of mine." Again, when questioned with reference to the figures being in his handwriting, he replied: "Well, I don't know. I think I wrote it, I am not sure." Another time he replied: "Well, I am quite sure that that is my handwriting, * * *." When asked if it were not possible that these figures might have been placed on the ballots before, he replied: "Well, I wouldn't say that. I think we would have seen it when we counted the ballots or when we piled them."

In a memorandum attached to its findings, the trial court stated with reference to his testimony and in explanation of its determination to disallow these ballots:

"* * * At no point * * * did he testify directly or clarify in any manner that the offending figures were actually made by him after the voting and during the counting of the ballots, but the most he did say in an attempt to explain matters were statements as follows: 'It looks like my writing.' 'I am quite sure that's mine.' 'I wouldn't be positive of it.' * * * In the opinion of the court the figures on the ballots designated are identifying marks and are illegal.

\* \* \* \* \*

"The testimony of the election judge William Thalhuber, although apparently conscientiously given, was not convincing in this respect, * * *. The witness * * * in his demeanor and manner of testifying demonstrated without question that he was not in fact positive that the writing on the ballots in question was his handwriting, nor were the figures and numbers and symbol explained in any other manner. Such testimony would not be sufficient to justify the presence of certain identifying figures or numbers on the ballots referred to from New Market Township, * * *."

With respect to these 5 ballots it is contended by Stepka that, since it is undisputed that each of such ballots was clearly and definitely marked—4 for him and 1 for Marshall; since it is clear that the figures placed thereon were made with ballpoint pen while the ballots were marked with pencil; since the figures which indicated the total vote of this township would not have been known to any voter until after the polls had closed; since the testimony of the election judge gives a logical explanation of the figures; and since no evidence was submitted that the voters casting these ballots had so marked them for identification purposes, the court's determination to disallow these 5 ballots was in direct conflict with the provisions of Minn. St. 204.22 (formerly § 206.50).

■ Questions raised by this appeal are governed by Minn. St. 204.22, which replaced Minn. St. 1957, § 206.50, taking effect Jan-

uary 1, 1960. As applicable here (with language not in the former law italicized), this section provides:

*"In counting ballots a ballot may not be rejected for any technical error that does not make it impossible to determine the voter's choice even though the ballot may be slightly soiled or defaced.* All ballots shall be counted for the persons for whom they were intended, so far as *the* intent can be clearly ascertained from the ballots themselves; and in determining *the* intent the following rules *are applicable and* shall be observed:

\* \* \* \* \*

"(k) *When a ballot is so marked by distinguishing characteristics that it is evident that the voter intended to identify his ballot, the entire ballot is defective."* (Italics supplied.)

■ This proceeding involves the first contest to come before us since the adoption of the amendments above indicated. The language thereof clearly manifests a legislative intent that any ballot clearly and definitely marked and cast for a candidate should not be rejected for any technical error which would not make it impossible to determine the voter's choice. This merely gives expression to the basic constitutional guarantees upon which our democratic system is founded. It can only mean that a voter should not be disenfranchised or a ballot disallowed when the voter's intent can be clearly ascertained therefrom. The "voter's choice" or the "voter's intent," when clearly ascertainable from the ballot, as in the instant case, is made of great importance by this legislative directive. Of equal importance is the protection of the right of the candidate for whom the vote was intended. Under § 204.22(k) are set forth the rules for determining when a ballot shall be defective because of identifying marks thereon. This requires evidence that the *voter,* rather than an election judge or some other person, shall have marked the ballot with distinguishing characteristics which evidence *his* intent to identify it before such ballot may be adjudged defective.

■ In the instant case there is no evidence that the 5 voters who had clearly and definitely marked their respective ballots in pencil for the candidates of their choice had placed the figures described on

the reverse side thereof. All of such figures were made with a ballpoint pen, and definitely related to a tabulation of the ballots. It seems highly improbable that prior to closing of the polls 5 separate voters would first mark their respective ballots with pencil, turn them over, and with ballpoint pen place on the reverse side thereof figures predicting subtotals and total tabulations of the votes which would be cast in the township. It is true that on cross-examination the election judge was somewhat cautious and indefinite as to recognition of his handwriting, but this should not nullify his clear and definite testimony as to the meaning of the figures, and as to facts which fairly established that they could not have been written on the challenged ballots by the voters who had cast them.

Upon the record presented, we conclude that there is no valid reason for disenfranchising these 5 voters or for denying credit for their votes to the respective candidates for whom they were cast. To hold otherwise would be to ignore the clear legislative directives embodied in § 204.22 that a ballot should not be rejected for any technical error that does not make it impossible to determine the voter's choice; and in § 204.22(k) that a ballot may be held defective because of distinguishing characteristics only when it is *evident* that *the voter* casting it *intended* thereby to identify his ballot.

■ Prior to the enactment of § 204.22, the only provision regarding identifying marks on ballots was Minn. St. 1957, § 206.17 (now, with modifications, § 204.11, subd. 3), which provided in part:

"* * * No voter, judge, clerk, or other person shall at any time place any mark as a means of identification under any ballot handed to or cast by any voter or upon any spoiled or discarded ballot except the initials of the judges on the backs of the ballots and the marks indicating the voter's choice of candidates made in the manner provided by law, and any violation of this provision shall be a gross misdemeanor."

In a series of decisions[3] rendered when this section was in force, this

---

[3]Hanson v. Emanuel, 210 Minn. 271, 297 N. W. 749; Aura v. Brandt, 211 Minn. 281, 1 N. W. (2d) 381; Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611; Murray v. Floyd, 216 Minn. 69, 11 N. W. (2d) 780.

court has held that any kind of a distinguishing mark or figure placed upon a ballot nullified such ballot and disenfranchised the voter casting it, even where it was clear that the voter did not make the mark or figure which identified the ballot. Apparently to correct this injustice, the legislature enacted the portions of § 204.22 above quoted. Thereunder, we are of the opinion that the 5 ballots, which were disallowed by the trial court because of the figures placed on the reverse side thereof, should be allowed and credited to the candidates for whom they were plainly marked—4 for Stepka, 1 for Marshall. This would make the final election returns 740 votes for Stepka and 739 votes for Marshall. Since this is the result even when Marshall is credited with all of the 9 challenged ballots which he claimed from the 21 that were disputed, it will be unnecessary to consider Stepka's challenges with reference thereto.

The judgment of the trial court is reversed with directions that the judgment be entered in accordance with this opinion.

Mr. Justice Otis, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.