# C. A. (GUS) JOHNSON v. DONALD E. SWENSON.

119 N. W. (2d) 723.

January 23, 1963—No. 38,988.

*Smith, McLean, Peterson & Sullivan,* for appellant.
*C. A. (Gus) Johnson II,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment of the district court in an election contest.

At the November 1962 general election, respondent, C. A. (Gus) Johnson, and appellant, Donald E. Swenson, were rival candidates for the office of representative in the Minnesota Legislature for the district comprising the city of Mankato. The county canvassing board of Blue Earth County declared that the result of the election was a tie, each candidate receiving 3,598 votes. Thereupon the county canvassing board drew lots, as is required by statute, and declared Donald E. Swenson to be elected. C. A. (Gus) Johnson thereupon instituted this proceeding to contest the election. The district court found contestant to be the winner.

There are 16 voting precincts in the city of Mankato. In precinct No. 2 and precinct No. 4, for many years the judges of the election have followed the practice of numbering all ballots serially prior to handing them to the voters. Some of the officials testified at the trial that the numbering was done to avoid the risk of handing more than

one ballot of each type to an individual voter and to enable the judges to quickly determine at any moment the number of votes cast when a press or radio source might seek information as to the progress of the voting. They acknowledged that the presence of the numbers on the ballot could conceivably permit them to determine how an individual voter had cast his vote, but denied that they in fact had used the numbers for such purpose. Two voters of the fourth precinct testified that they had noticed the number on the ballot and had questioned the propriety thereof, but in both cases they did proceed to cast their ballots. No voter testified that he could remember the number of the specific ballot he used in this contest.

The trial court, in holding that the votes of these two precincts should be counted, summarized the matter as follows:

"* * * In the matter under consideration the voter was in no way identified on the records although the ballot was numbered. The opportunity of remembering the particular number on a ballot given to a voter was present, however few noticed the number. The election judges were under oath as required by Section 203.25 M. S. A. to perform their duties according to law and the best of their ability. Obviously they violated the oath by placing the numbers on the ballot through ignorance or disregard of the law prohibiting such but this does not permit the Court to assume they also violated the law as to the secrecy of the ballot."

In the two precincts involved, slightly more than 700 votes were cast. If all of these votes were discarded, contestee would win. If they are counted, contestant is the winner.

There was no record made or retained by any election official as to the number of the ballot any voter received, nor was the voter identified by numbering the registration card.

There were some 39 other ballots that were disputed, but it is conceded by both parties that the determination of the trial court, or of this court, as to the validity of such ballots would not change the result of the election and for that reason they need not be considered by us. The only question for our consideration is whether the number-

ing of a ballot by the election officials prior to handing the ballot to the voter would invalidate the ballot.

At the outset, it must be evident to everyone that the numbering of the ballots by the election officials, as was done here, was a clear violation of Minn. St. 204.11, subd. 3, which reads:

"No voter, judge, or any other person may at any time place any mark as a means of identification upon any ballot handed to or cast by any voter or upon any spoiled or discarded ballots except the proper signature and initials provided by law to be placed upon ballots."

Violation of this provision is a gross misdemeanor. § 210.14. We cannot condemn too strongly the failure of election officials to observe this clear legislative declaration of what they may not do. Those who undertake to conduct and supervise elections should familiarize themselves with the elemental rules for conducting elections. Violation of many of these statutory provisions exposes the election official to criminal prosecution. See, for instance, § 210.06. The question before us, however, is whether a voter should be disenfranchised for the failure of election officials to follow these simple rules in the absence of any showing of fraud, collusion, or participation by the voter in the violation of the law.

Originally, some of our election laws required ballots to be numbered. Brisbin v. Cleary, 26 Minn. 107, 1 N. W. 825, involved the construction of L. 1878, c. 84, § 8 (G. S. 1878, c. 1, § 84), which provided:

"The ballots shall be folded by the voter, and delivered to one of the judges of election, who shall forthwith lay the same on the top of the ballot box, at the same time in an audible voice proclaim the name of the person offering to vote, to the board, and if the judges be satisfied, according to the evidence as herein described, that the person offering the vote is a legal voter, the clerks of election shall enter the name of the voter and his number under the proper heading in the poll book, and the judges shall endorse on the back of the ticket offered, the number corresponding with the number of the voter on the poll book, and shall immediately put his ticket into the ballot box."

We held this provision contrary to Minn. Const. art. 7, § 6, which provides:

"All elections shall be by ballot, except for such town officers as may be directed by law to be otherwise chosen."

In so doing, we said (26 Minn. 108, 1 N. W. 826):

"* * * as applied to elections of public officers, voting by ballot signifies a mode of designating an elector's choice of a person for an office by the deposit of a ticket, bearing the name of such person, in a receptacle provided for the purpose, in such a way as to secure to the elector the privilege of complete and inviolable secrecy in regard to the person voted for. This privilege of secrecy may properly be regarded as the distinguishing feature of ballot voting, as compared with open voting, as, for instance, voting *viva voce*. The object of the privilege is the independence of the voter."

We long ago recognized the difference between acts done by the voter and by others without the voter's participation or collusion. In State ex rel. Braley v. Gay, 59 Minn. 6, 60 N. W. 676, the law under consideration required that two of the judges of "opposite political parties" shall place their initials on the backs of all ballots before they are used by the voters. Some ballots were challenged because they contained the initials of two judges of the same political faith, and it was argued that this was a violation of the law that invalidated the ballot. In holding to the contrary, we said (59 Minn. 20, 60 N. W. 677):

"* * * It is not claimed that there was any willful disregard of this provision of the law, or that by failing to observe it a fraud was perpetrated upon any one, or that a wrong was intended or accomplished. The placing of initials on the ballots by judges who belonged to the same party was in ignorance of the requirement in question. There are many reasons why this provision must be held simply directory, but we need not state all. One is that if this is a positive requirement the entire vote of a precinct could be rejected by deception on the part of a person seeking the position of judge of election, as to his politics, or by a mistake on the part of the appointing power as to the

political affiliations of a person placed by it on the board, and in many other ways. * * * With the construction contended for the minority party in any precinct could disfranchise every voter in it, and the fewer in numbers of such party the easier total disfranchisement could be accomplished."

That decision was followed in Pennington v. Hare, 60 Minn. 146, 62 N. W. 116. In the Pennington case, certain ballots were numbered without the knowledge of the electors casting them, by the judges of the election, by reason of a misunderstanding of the law on their part. We held that the ballots should be counted, and in so doing we said (60 Minn. 147, 62 N. W. 117):

"* * * To hold otherwise would place it in the power of the election officers to disfranchise electors at their pleasure."[1]

In the Pennington case there were other ballots on which identification marks were placed by the voters. In recognizing the difference between acts done by the voter and acts done by the official, we said (60 Minn. 150, 62 N. W. 118):

"* * * There is a clear distinction between the provisions and prohibitions in election laws which are personal to the elector, which, if he violates them, it is his own fault, and those which apply to elective officers, over whose conduct he has no control. In the former case they are to be construed as mandatory, as a general rule, and his vote will be rejected if he intentionally fails to comply with them, while in the latter case they are to be construed as directory, unless otherwise expressly, or by necessary implication, so declared by statute."

Familiar examples of the failure of the voter to observe statutory rules which have been construed to be mandatory may be found in cases dealing with the voters requiring help in voting[2] and those casting absentee ballots.

---

[1] It does not appear from the opinion when the ballots were numbered, but an examination of the transcript on file in the office of the clerk of the supreme court shows that the numbers were placed on the ballots by the officials after voting but before depositing them in the box.

[2] Nelson v. Bullard, 155 Minn. 419, 194 N. W. 308; Sweno v. Gutches, 191 Minn. 24, 252 N. W. 839.

In Wichelmann v. City of Glencoe, 200 Minn. 62, 273 N. W. 638, we held that compliance with the requirements of the statute respecting voting by absentee ballot was mandatory. In so doing, we said (200 Minn. 66, 273 N. W. 640):

"The provisions of election laws requiring acts to be done and imposing obligations upon the elector which are personal to him are mandatory. He is personally at fault if he violates them. If his vote is rejected for such violations, it is because of his own fault, *not that of election officials.* Such provisions prescribe mandatory conditions precedent to the right of voting. * * *

* * * * *

"* * * The obligation is on the voter to comply with the requirements of the law that apply to him personally. In holding the statute mandatory in this respect, we simply hold the voter to the requirements which the law prescribes. If he fails to perform duties required of him, he does so at his peril." (Italics supplied.)

This difference has now been recognized by our legislature in the recodification of our election laws in 1959. While Minn. St. 204.11, subd. 3, prohibits any voter, judge, or any other person from placing any mark as a means of identification upon a ballot other than the signature and initials of the election judges which are required by law, when we come to § 204.22, which prescribes the rules for counting ballots and declares which ballots should be counted and which ones should be discarded, we look in vain for any provision disqualifying a ballot for any unlawful act of an official. Section 204.22(k), which is the crucial provision here, provides that, when a ballot is so marked by distinguishing characteristics that it is evident that *the voter* intended to identify the ballot, the entire ballot is defective. It says nothing about declaring a ballot defective because of the act of an official.

Finally, this difference has been recognized and the issue involved here has been decided adversely to contestant in Marshall v. Stepka, 259 Minn. 553, 108 N. W. (2d) 614, which is the only decision of this court construing the applicable statutory provisions since the re-

codification of our election laws. In that case we said (259 Minn. 558, 108 N. W. [2d] 618):

"* * * The language * * * [§ 204.22(k)] clearly manifests a legislative intent that any ballot clearly and definitely marked and cast for a candidate should not be rejected for any technical error which would not make it impossible to determine the voter's choice. This merely gives expression to the basic constitutional guarantees upon which our democratic system is founded. It can only mean that a voter should not be disenfranchised or a ballot disallowed when the voter's intent can be clearly ascertained therefrom. The 'voter's choice' or the 'voter's intent,' when clearly ascertainable from the ballot, as in the instant case, is made of great importance by this legislative directive. Of equal importance is the protection of the right of the candidate for whom the vote was intended. Under § 204.22(k) are set forth the rules for determining when a ballot shall be defective because of identifying marks thereon. This requires evidence that the *voter*, rather than an election judge or some other person, shall have marked the ballot with distinguishing characteristics which evidence *his* intent to identify it before such ballot may be adjudged defective.

* * * * *

"In a series of decisions rendered when this section [Minn. St. 1957, § 206.17] was in force, this court has held that any kind of a distinguishing mark or figure placed upon a ballot nullified such ballot and disenfranchised the voter casting it, even where it was clear that the voter did not make the mark or figure which identified the ballot. Apparently to correct this injustice, the legislature enacted the portions of § 204.22 above quoted."

While preservation of the inviolable secrecy of our ballot is of great importance, so too is the right of a voter not to be disenfranchised because of an unlawful act of an election official without his collusion, participation, or consent, and often without his knowledge. What the voter himself does, or assists or cooperates with another in doing, he is chargeable with, and then he cannot be heard to complain if his vote is not counted. It is quite another thing to refuse to count his vote on account of the act of an election official over which

he had no control. No one can condone the failure of election judges to carefully consider and obey the regulations prescribed by law, but the disenfranchisement of whole groups of voters by reason of conduct on the part of election judges cannot be lightly contemplated. While the record here shows that the opportunity to violate the secrecy of the ballot may have been present, it does not show that it was in fact violated.

We believe that the correct rule is that, if the voter places on the ballot any mark that can reasonably be said was intended to identify his vote, the ballot must be rejected, but if a mark is placed on the ballot by an election official without the cooperation, collusion, participation, or consent of the voter such ballot must be counted.[3] It follows that the trial court here correctly held that the ballots involved in the two precincts in the city of Mankato should be counted.

Affirmed.

OTIS, JUSTICE (dissenting).

I would reject all of the serially numbered ballots.

The purpose of requiring secrecy in balloting is not merely to protect the innocent elector from intrusions while he is voting. It is also to prevent the possibility of connivance between a corrupt elector and third persons who require evidence that a vote has been cast in a particular manner.[1]

While an elector should not be disfranchised because of identifying marks placed on his ballot *after* he has voted,[2] I do not agree that he himself is without fault in using a ballot which is patently susceptible of identification when he receives it.

If we permit numbered ballots to be counted we cannot logically reject those which have been previously identified with the voter's

---

[3]We are not dealing with such a complete disregard for procedural rules that it must be held the election did not reflect the true vote of the people. Cases may arise where that situation exists. See, In re Contest of Election of Vetsch, 245 Minn. 229, 71 N. W. (2d) 652.

[1]Elwell v. Comstock, 99 Minn. 261, 270, 109 N. W. 113, 698, 701, 7 L. R. A. (N. S.) 621.

[2]Pennington v. Hare, 60 Minn. 146, 62 N. W. 116.

name and address. In either case a corrupt elector has an equal opportunity to prove to a dishonest pollwatcher how he voted.

We instinctively rebel against disfranchising a great number of persons who are unquestionably innocent of any wrongdoing. Nevertheless, the fact that Minnesota elections have been historically free from fraud is a tribute to our strict application of the rules safeguarding anonymity in voting. If the integrity of our election processes is to continue, it is not enough that we condone loose practices until there is tangible evidence of corruption. There is no better way to avoid a conflagration than "to keep the straw away from the fire." Goodrich v. Northwestern Tel. Exch. Co. 161 Minn. 106, 111, 201 N. W. 290, 292.

Mr. Justice Sheran took no part in the consideration or decision of this case.

