JOHN M. FITZGERALD v. HENRY J. MORLOCK.

120 N. W. (2d) 339.

February 13, 1963—No. 38,982.

*Bowen, Bowen, Preus, Farrell & Adams,* for appellant.
*C. L. Nelson,* for respondent.

NELSON, JUSTICE.

This is an election contest arising out of the November 6, 1962, general election for state representative from the 12th legislative district in Scott County, Henry J. Morlock and John M. Fitzgerald being the candidates.

The official vote as attested by the county canvassing board totaled 4,367 for Morlock and 4,353 for Fitzgerald, establishing Morlock the winner by 14 votes. Fitzgerald served and filed notice of election contest on November 23, 1962. A recount of ballots was made and the

inspectors appointed reported to the district court that contestant Fitzgerald had 4,296 undisputed and 57 disputed ballots; and that Morlock had 4,281 undisputed and 80 disputed ballots, leaving 137 disputed ballots for final determination by the trial court.

During the hearing before the trial court testimony was received concerning some of the disputed ballots. During the hearing the parties stipulated that 9 of the disputed ballots for each candidate would stand undisputed. At the close of the hearing the trial court made findings of fact, conclusions of law, and order for judgment declaring Fitzgerald winner by 12 votes and ordered issuance of the certificate of election to him. Issuance of the certificate was delayed pending determination of this appeal by stipulation of the parties and an opinion of this court. Fitzgerald v. Morlock, 264 Minn. 417, 120 N. W. (2d) 336.

The court disposed of the 119 ballots still in dispute at the end of the trial in the following manner: Of the 71 disputed ballots for Morlock, the court held that 29 were void and 42 acceptable. Of the remaining 48 disputed ballots for Fitzgerald, the court held 9 void and 39 acceptable.

On January 4, 1963, contestee Morlock served notice of appeal to this court. Morlock challenges the lower court's decision as to 26 of the 29 rejected ballots cast for him and 11 of the ballots for Fitzgerald accepted by the lower court. Fitzgerald challenges the trial court's acceptance of 9 ballots for Morlock. We shall also consider ballot No. 22 for Fitzgerald, which was rejected by the lower court. Fitzgerald challenged this in his brief, but the ballot was not included in the final number agreed upon at the oral argument before this court. Thus, we have 47 ballots to consider.[1]

---

[1]On oral argument, counsel indicated that 48 of the original 137 disputed ballots need be considered on this appeal. After checking the briefs we find that Morlock has inadvertently contested the lower court's decision on ballots No. 1 and No. 35, reducing that number to 46. As to ballot No. 1, Morlock alleges that the lower court erred in rejecting the ballot. The ballot was cast for Fitzgerald, and he has not objected to its rejection. As to ballot No. 35, Morlock alleges that the lower court erred in not accepting the ballot, but we find that the court had accepted it. The addition of bal-

The statutes applicable in this contest are limited to Minn. St. 204.10, 204.11, and 204.22. They are the result of an amendment effected through L. 1959, c. 675, approved April 24, 1959, and effective January 1, 1960.

The first paragraph of § 204.22, which provides rules for the counting of ballots, reads as follows:

"In counting ballots a ballot may not be rejected for any technical error that does not make it impossible to determine the voter's choice even though the ballot may be slightly soiled or defaced. All ballots shall be counted for the persons for whom they were intended, so far as the intent can be clearly ascertained from the ballots themselves; * * *."

Thereafter the rules to be followed in determining the intent of the voter are set out. These rules embody the substance of Minn. St. 1957, § 206.50, from which they were derived.

Section 204.10 provides in part as follows:

"(a) The voter shall place a mark (X) in the square opposite the printed name of each candidate for whom he desires to vote, and in the square before the 'YES' or 'NO' if he desires to vote for or against any proposition.

"(b) If he so desires, he may write other names in the blank spaces provided therefor under the printed names of the candidates, except that no names may be written in on primary election ballots."

Section 204.11 provides in part as follows:

Subd. 3. "No voter, judge, or any other person may at any time place any mark as a means of identification upon any ballot handed to or cast by any voter or upon any spoiled or discarded ballots except the proper signature and initials provided by law to be placed upon ballots."

Subd. 6. "The judges shall at all times observe and enforce the provisions of the Minnesota Election Law. Violation of subdivision 3 or subdivision 4 [of this section] is a gross misdemeanor."

---

lot No. 22 by the court makes a total of 47 ballots to be considered on this appeal.

Minn. Const. art. 7, § 6, provides:

"All elections shall be by ballot, except for such town officers as may be directed by law to be otherwise chosen."

Minn. Const. art. 7, § 1, secures to every person possessing the qualifications prescribed therein the right to vote.

The privilege of secrecy may properly be regarded as the distinguishing feature of ballot voting. The manner of voting and depositing ballots has operated as a safeguard in securing to the elector the privilege of complete and inviolable secrecy in regard to the person voted for. Brisbin v. Cleary, 26 Minn. 107, 1 N. W. 825.

1. There is a clear distinction between the provisions and prohibitions in the election laws which are personal to the elector and those which apply to election officers over whose conduct he has no control. Pennington v. Hare, 60 Minn. 146, 62 N. W. 116.

2. The rule was established by an early line of decisions that any reasonable regulations of the statute as to the conduct of the voter himself were mandatory and that his vote may be refused if he fails to comply with them. But if he complies with the law his right to vote cannot be defeated by reason of irregularities, ignorance, inadvertence, or mistake, or even intentional wrong on the part of the election officers. All provisions of election laws regulating the conduct of election officers, except in cases of actual fraud, are directory, that is, compliance therewith is not essential to a valid election, but compliance with the law by election officers is to be secured by punishing them and not by defeating the will of the citizen as expressed by his ballot. This rule became settled policy in Taylor v. Taylor, 10 Minn. 81 (107); Edson v. Child, 18 Minn. 43, 323 (64, 351); Stemper v. Higgins, 38 Minn. 222, 37 N. W. 95; Soper v. County of Sibley, 46 Minn. 274, 48 N. W. 1112; State ex rel. Braley v. Gay, 59 Minn. 6, 60 N. W. 676.

In McEwen v. Prince, 125 Minn. 417, 422, 147 N. W. 275, 276, this court held:

"* * * The legislature may, unquestionably, prescribe such safeguards and such rules and regulations in respect to the exercise of this

right as are reasonably necessary to prevent fraud, to limit it to those possessing the requisite qualifications, and to insure a free and explicit expression of the will of the voter; but when it has appeared that an election was fairly and honestly conducted, and that the persons voting thereat in fact possessed the qualifications prescribed by the Constitution and had cast their votes in a good-faith attempt to exercise the right secured to them by the Constitution, and no taint of fraud or bad faith has appeared, *this court has never held such votes illegal and void for failure to comply with some statutory regulation, unless required to do so by the unequivocal mandate of the law-making power*. [Cases cited.]" (Italics supplied.)

3. In McVeigh v. Spang, 178 Minn. 578, 584, 228 N. W. 155, 157, this court made the following observation in connection with marks which may be held to be identifying marks:

"*Where marks are made by a voter upon his ballot* in a place or in such manner that it can reasonably be seen or inferred that they were made *in an attempt to indicate his choice* or vote for candidates or measures to be voted for, *the marks are generally held not to be identifying marks.* But if a voter *intentionally* makes marks upon his ballot in an unauthorized place not connected in any way with the efforts of the voter to indicate his choice of candidates or measures to be voted for and not otherwise reasonably explained, such marks may well be held to be identification marks. * * *

\* \* \* \* \*

"The ballots being written documents and present in evidence here, this court is in as good a position to construe them as was the trial court. We are nevertheless governed by the rule that if the evidence reasonably sustains the findings of the trial court the findings control. The derivative rule is that it is the province of the trial court to draw reasonable inferences from the evidence before it, and that if the inferences drawn by the trial court are such as reasonable minds might properly draw from the evidence its findings therefrom are sufficiently sustained." (Italics supplied.)

4. In Bloedel v. Cromwell, 104 Minn. 487, 488, 116 N. W. 947, 948, this court, in discussing election laws, said:

"* * * Election laws are to be construed so as to secure to every voter reasonable opportunity to vote and to have his vote counted as cast, when his intention can be ascertained from the ballot without violating statutory provisions. *No man should be disfranchised upon a doubtful construction of such statutes.* * * * The intent of the voter, accordingly, to be effective, must be shown and indicated by markings on the official ballot substantially in the manner provided by such law, and in bona fide attempt at compliance therewith. * * * *Mere irregularities in the marking of ballots, such as neither create uncertainty as to the voter's choice nor serve as distinguishing signs, violative of secrecy, are not cause for rejecting ballots.*" (Italics supplied.)

In Murray v. Floyd, 216 Minn. 69, 75, 11 N. W. (2d) 780, 785, this court, speaking through Mr. Justice Peterson who referred to McVeigh v. Spang, *supra,* by stating that the views expressed therein are sound and are confirmed by the facts disclosed in other cases, said:

"* * * Courts should be reluctant to disfranchise the voter. Rules rejecting ballots because of distinguishing marks have that effect in particular cases. Our rules are quite stringent and should not be unnecessarily extended. *Where,* as here, *there is basis therefor, the presumptions of legality, innocence, and good faith should be applied.* We therefore hold that, in the absence of proof of intention to identify the ballot, the placing of a cross mark before a blank line for writing in the name of a candidate is not a vote for any candidate and is not a distinguishing mark which identifies the ballot. Anything to the contrary in Aura v. Brandt is overruled." (Italics supplied.)

5. In Aura v. Brandt, 211 Minn. 281, 292, 1 N. W. (2d) 381, 388, this court said:

"* * * A ballot should receive an ordinary and not a forced construction. *The ballot should be upheld* where *when* read naturally in the ordinary way *it is consistent with innocence, good faith, and honest voting.*" (Italics supplied.)

6. In Hanson v. Emanuel, 210 Minn. 271, 273, 297 N. W. 749, 751, this court held:

"* * * The reason for rejecting a ballot upon which the voter has placed a distinguishing mark is that such a mark identifies the ballot and affords means for the corruption and intimidation of the voter in violation of the letter and spirit of the Australian ballot law, which provides for secrecy of the ballot as a safeguard against such evils. * * *

"*Our statute seeks to give effect to the intention of the voter.* By prescribing rules for the counting of certain ballots in which there is irregularity *it implicitly provides that mere irregularity shall not vitiate the entire ballot.* 3 Mason Minn. St. 1940 Supp. § 601-6(10)k (formerly 1 Mason Minn. St. 1927, § 454), provides that all ballots shall be counted for the persons for whom they were intended, so far as such intent can be ascertained from the ballots themselves, * * *.

* * * * *

"*Absent, as here, a statute enumerating certain marks as illegal and distinguishing regardless of intent,* a distinguishing mark on a *ballot which requires rejection of the entire ballot is one that is placed there deliberately by the voter with intention to identify the ballot after the vote is cast and not as the result of an honest effort on the part of the voter to indicate his choice of candidates.* The test is whether or not a plausible reason for the mark may be suggested consistent with honesty and good faith of the voter. [Cases cited.]

"*All marks and irregularities are not to be taken as identification of a ballot and grounds for rejecting it.*" (Italics supplied.)

The Illinois Supreme Court, having considered the question under a similar statute in Hodgson v. Knoblauch, 268 Ill. 315, 318, 109 N. E. 338, 339, Ann. Cas. 1917E, 653, 654, said:

"* * * Any one of an infinite variety of marks may be determined upon for the purpose of identification and may constitute a distinguishing mark, and, on the other hand, marks may be so connected with an apparently honest effort of the voter to indicate his choice of candidates that it is evident that they were not made for the purpose of identifying the ballot and should not be regarded as distinguishing

marks. The body of electors includes not only the well informed, capable and careful voter, but also the ignorant, incapable and careless voter, and if a mark is reasonably connected with an effort of the voter to cast his ballot and can be reasonably explained, consistently with an honest purpose on his part, it is not a distinguishing mark and the ballot should not be rejected."

Nine Morlock ballots (Nos. 18, 46, 50, 51, 119, 80, 83, 111, and 118), challenged by Fitzgerald, were accepted by the trial court. We are in agreement that they were properly accepted under the rules of §§ 204.10, 204.11, and 204.22.

In challenging ballot No. 46 Fitzgerald contends that it is invalid because the voter did not mark his X's uniformly. While the voter's crossmarks may be somewhat irregular, they nevertheless indicate an attempt by the voter to place a crossmark in the voting space before the name of every candidate for which a vote was cast. That the voter's intent can be ascertained from this ballot is clear. It was properly accepted by the trial court.

It is contended by Fitzgerald that Morlock ballot No. 50 should have been disqualified because it contains the word "no" and an obliteration before candidate Fitzgerald's name. This ballot was properly accepted under the provisions of § 204.22(i), which provides:

"When a ballot shows that marks have been made against the names of two candidates, and an attempt made to erase or obliterate one of the marks, it shall be counted for the candidate for whom it was evidently intended."

Fitzgerald contends that the trial court improperly accepted ballot No. 51, in that some of the voting crossmarks were on the right side of the ballot instead of in the voting squares on the left side and that this constituted a method of identifying the ballot. The ballot was properly accepted by the trial court under the provisions of § 204.22(d), which provides as follows:

"When a mark (X) is made out of its proper place, but on or so near a name or space as to indicate clearly that the voter intended to mark the name, the vote shall be counted as so intended."

Fitzgerald contends that ballot No. 119 should have been invalidated under § 204.11, subd. 3, and § 204.22(k), because of a heavily penciled line in the write-in space for coroner. He argues that this penciled line constitutes an intentional identifying or distinguishing mark made by the voter. We think it obvious that the voter merely indicates that he did not intend to vote for coroner. The trial court properly accepted the ballot under the provisions of § 204.22.

Fitzgerald contends that ballots Nos. 80, 83, and 111 should have been disallowed because of technical errors which he asserts are disqualifying. The errors to which he refers are slightly indistinct crossmarks, and while they are not exactly uniform, they so closely approximate the correct mark that they must be counted, as ruled by the trial court. Ballot No. 118 has a short perpendicular pencil mark in the write-in space for coroner. All other crossmarks are uniform. We accept the court's ruling on the foregoing ballot under the provisions of § 204.22(b), which provides that the name a voter desires to write in shall be counted for that candidate whether or not the voter makes a crossmark in the square opposite the blank line.

Ballot No. 18 was accepted by the trial court. Fitzgerald contends that an oval mark appearing on the face of the ballot in the upper left corner constitutes an intentional identifying and distinguishing mark by the voter, disqualifying the ballot. It is obvious that the voter made use of a ballpoint pen in marking his ballot and that the oval mark resulted from the voter's testing the writing quality of his pen before marking the ballot, not an uncommon practice. The provisions of § 204.22 support the ruling of the trial court.

We now pass to the consideration of 11 ballots (Nos. 2, 19, 44, 57, 65, 79, 103, 104, 113, 124, and 129) accepted as valid by the trial court and challenged by Morlock.

Ballots Nos. 65, 79, 103, 104, and 113 fall within one category. They have been challenged because some crossmarks were made in pencil and some in ink by the voter on the same ballot. The trial court might well have concluded that the voter having had difficulty with one writing instrument changed to another, as between pen and pencil. There is no statutory rule which requires that the voter must make

every crossmark throughout the ballot either by pen or by pencil. The trial court was justified in accepting the foregoing five ballots under the provisions and rules enunciated in § 204.22.

Morlock contends that the court was in error in accepting ballot No. 2. The voter cast his vote for five candidates by use of uniform crossmarks. However, before the names of seven other candidates the voter placed the figure O plus a crossmark in the voting squares opposite the write-in spaces. The trial court apparently concluded that the interchangeable use of the crossmark and the figure O was not done for identifying purposes. However, this ballot must be and is rejected under the provisions of § 204.22(h).

Morlock contends that ballot No. 19, ruled acceptable, must be rejected under the provisions of § 204.22(h), because the voter did not use a uniform mark in casting his ballot. Section 204.22(h) provides:

"When a voter uniformly uses a mark other than (X) in marking his ballot, clearly indicating his intent to mark against a name, and does not use (X) anywhere else on the ballot his vote shall be counted for each candidate so marked."

The clear implication of this section is that ballot No. 19 is not acceptable as a legal ballot and must be rejected. The acceptance by the trial court is overruled.

Ballots Nos. 44 and 57 were accepted by the trial court. Morlock challenges their validity. The voter placed a downstroke in the crossmark in voting for sheriff on ballot No. 44. The voter drew a line across the top of the crossmark in voting for commissioner on ballot No. 57. The other crossmarks are uniform throughout the voting on both ballots. These slight distortions are mere irregularities which do not interfere in determining the voter's choice. The rulings of the trial court find support under the provisions of § 204.22(h) and are affirmed.

The trial court ruled ballot No. 124 acceptable. Morlock contends that the ballot is invalid because the word "NO" has been placed in the voting square opposite the names of two of the candidates. The voter used a crossmark uniformly in the squares opposite the names of those

for whom he cast his vote. He placed "NO" in the squares opposite the names of two candidates for whom he did not vote. We think the ballot clearly manifests the intent of the voter and was properly accepted by the trial court.

The trial court ruled ballot No. 129 acceptable. Morlock contends that it is invalid for the reason that the voter did not make his crossmarks uniformly and fully within the voting squares opposite the candidates' names. The manner in which the voter placed his crossmarks on the ballot is governed by § 204.22(d). The ruling of the trial court is affirmed.

The trial court rejected as invalid ballots Nos. 5, 9, 15, 69, and 120. Morlock contends that these ballots should have been held valid; that even though the ballots disclose variation in the voting marks used, they nevertheless indicate the intent and choice of the voter and furnish no proof that the different voting marks were made for the purpose of identifying or distinguishing the ballots. The court correctly rejected these ballots under the provisions of § 204.22(h).

The trial court rejected ballot No. 8 because of a variation in voting marks, violating the requirements of § 204.22(h). While the second voting mark on the ballot is somewhat indistinct, it fulfills the requirements of § 204.10(a) in that it closely approximates a proper crossmark as was otherwise uniformly used in casting the ballot. The rejection of ballot No. 8 is overruled.

The trial court rejected ballots Nos. 29, 33, 48, 52, 74, 82, 95, 98, and 116. Morlock contends that the foregoing ballots are valid; that none is violative of the provisions of § 204.11, subd. 3, or the provisions of § 204.22(k). We will consider these ballots separately.

On ballot No. 29 the voter inadvertently placed a crossmark opposite the write-in space in the first voting section of the ballot. This constituted no vote at all, since he did not make use of the write-in privilege but voted for the candidate whose name was printed in that bracket. We are constrained to hold that this crossmark inadvertently placed in the wrong space does not constitute an intentional identifying or distinguishing mark. We therefore reject the finding of the trial court that it was such a mark.

It appears that ballot No. 33, as in the case of ballot No. 29, was rejected because the voter placed a crossmark in the voting square opposite a write-in space for county treasurer and an additional crossmark before the printed name of the candidate for treasurer. The voter used a uniform crossmark throughout the ballot. The reasons for holding ballot No. 29 valid apply to ballot No. 33, and the rejection is overruled.

Ballot No. 48 was rejected because the voter inadvertently entered a crossmark above the voting square for county treasurer and, without obliterating the additional crossmark, properly placed his crossmark in the square for treasurer. He used the crossmark uniformly throughout the ballot. It should not have been rejected and is ruled acceptable for the reasons stated in our discussion of ballots Nos. 29 and 33. The rejection is overruled.

It appears that ballot No. 52 was rejected because the voter made a crossmark above as well as in the square in the write-in space left open for coroner. Both of these crossmarks were obliterated. All votes were cast by a uniform crossmark. There is no indication that the obliterated marks were placed thereon to identify or distinguish the ballot. Section 204.22(i) is controlling. The rejection is overruled.

It appears that the ballot No. 74 was rejected because the voter had placed two crossmarks within the voting box opposite the printed name of the candidate for clerk of district court. Placing two crossmarks within one voting bracket is not subject to any statutory rule. Voting by a double X for the same candidate, as was done here, does not of itself constitute an identifying or distinguishing mark. The rejection of ballot No. 74 is overruled.

Ballot No. 82 was rejected because a crossmark appears to have been placed above the voting square opposite the printed name for the candidate for sheriff. It appears that after making the crossmark above the line the voter placed his crossmark for sheriff in the voting square below. All votes cast were by uniform crossmarks. This is a mere irregularity, and the ballot should be held valid for the reasons applied to ballots Nos. 29, 33, and 48. The rejection by the trial court is overruled.

Ballot No. 95 was ruled invalid in part for reasons similar to those applied to ballot No. 82. The crossmarks used by the voter appear to be as uniform throughout as the voter was able to make them. An additional crossmark is found to the left of the heading above the voting bracket for court commissioner. See § 204.22(d), heretofore quoted. The rejection by the trial court is overruled.

Ballot No. 98 was rejected because a check mark was placed in the voting square opposite the write-in space for coroner. The voter used a uniform crossmark down to the voting space for county coroner. This mark placed in the last voting box fails to constitute a vote because no write-in was attempted. Clearly, it is a mere irregularity and provides reasonable inference that it was not intentionally made to identify the ballot. The rejection by the trial court is overruled.

It appears that ballot No. 116 was rejected because the voter placed two crossmarks within the voting square for county auditor, which constitutes the only irregularity on the ballot. The statute nowhere provides that such an irregularity constitutes an identifying mark, and it falls within the provision of § 204.22(d). The intent of the voter can be clearly ascertained from the ballot itself. It should not have been invalidated, and the rejection of the trial court is overruled.

We have selected for reference two Morlock ballots (Nos. 6 and 49) and four Fitzgerald ballots (Nos. 27, 63, 132, and 133) for the purpose of demonstrating inconsistent rulings by the trial court in its rejection of ballots Nos. 29, 33, 48, 52, 74, 82, 95, 98, and 116, all of which we overruled. Ballots Nos. 6, 27, 49, 63, 132, and 133 all contain superfluous or irregular marks of one kind or another outside of the voting squares on the ballot. The trial court ruled that these marks were not distinguishing or identifying. We agree with the ruling of the trial court on those ballots, but feel that for the sake of consistency we must overrule the trial court's rejection of ballots Nos. 29, 33, 48, 52, 74, 82, 95, 98, and 116.

7. The trial court rejected ballot No. 75 because an extraneous figure "5" appears at the bottom of the face of the ballot. On ballot No. 76 an extraneous figure "9" appears, and on ballot No. 77 an extraneous figure "5" appears, both placed in approximately the same

position as the figure found on ballot No. 75. All three of the figures apparently were written in the same hand with a ballpoint pen. The initials of the election judges on the reverse side appear to have been written with ballpoint pens. While the election judges have testified that they did not place marks upon any of the ballots, no testimony was offered that the voters might have placed these marks on the three ballots. Since the voters casting the ballots all voted in pencil and all of the numerals apparently were written by one person, we hold that the marks were not placed on the ballots by voters who intended to identify or distinguish their ballots.

In Marshall v. Stepka, 259 Minn. 553, 108 N. W. (2d) 614, this court had before it a similar situation except that in that case the numerals placed by a ballpoint pen were on the back of the ballots. One of the election judges testified that while he was not sure he had written the particular numerals involved in the dispute, they had been placed there during the counting of the ballots. The court in that case quoted part of § 204.22, especially underscoring as follows (259 Minn. 558, 108 N. W. [2d] 617):

"In counting ballots a ballot may not be rejected for any technical error that does not make it impossible to determine the voter's choice even though the ballot may be slightly soiled or defaced. All ballots shall be counted for the persons for whom they were intended, so far as the intent can be clearly ascertained from the ballots themselves; and in determining the intent the following rules are applicable and shall be observed: * * *."

The court also took note of paragraph (k) of that section, which provides that:

"When a ballot is so marked by distinguishing characteristics that it is evident that the voter intended to identify his ballot, the entire ballot is defective."

The court then said (259 Minn. 558, 108 N. W. [2d] 618):

"This proceeding involves the first contest to come before us since the adoption of the amendments above indicated. *The language thereof clearly manifests a legislative intent that any ballot clearly and de-*

*finitely marked and cast for a candidate should not be rejected for any technical error which would not make it impossible to determine the voter's choice.* This merely gives expression to the basic constitutional guarantees upon which our democratic system is founded. It can only mean that a voter should not be disenfranchised or a ballot disallowed when the voter's intent can be clearly ascertained therefrom. The 'voter's choice' or the 'voter's intent,' when clearly ascertainable from the ballot, as in the instant case, is made of great importance by this legislative directive. Of equal importance is the protection of the right of the candidate for whom the vote was intended. Under § 204.22(k) are set forth the rules for determining when a ballot shall be defective because of identifying marks thereon. *This requires evidence that the voter, rather than an election judge or some other person, shall have marked the ballot with distinguishing characteristics which evidence his intent to identify it before such ballot may be adjudged defective."* (Italics supplied.)

In the Marshall case this court concluded that under the circumstances of that case there was no valid reason for disenfranchising the five voters or denying credit for their votes to the respective candidates for whom they had voted. The court said (259 Minn. 559, 108 N. W. [2d] 618):

"* * * To hold otherwise would be to ignore the clear legislative directives embodied in § 204.22 that a ballot should not be rejected for any technical error that does not make it impossible to determine the voter's choice; and in § 204.22(k) that a ballot may be held defective because of distinguishing characteristics only when it is *evident* that *the voter* casting it *intended* thereby to identify his ballot."

We think it clear from the statements contained in Marshall v. Stepka, *supra,* that he who would challenge a ballot by alleging that the voter placed a distinguishing mark thereon, for the purpose of identifying the ballot, must bear the burden of proving that the voter, not someone else, made the identifying mark. See, also, Johnson v. Swenson, 264 Minn. 449, 119 N. W. (2d) 723.

Morlock is therefore entitled to have ballots Nos. 75, 76, and 77 held valid and the trial court's rejection of those ballots is overruled.

It appears that the trial court rejected ballot No. 14 because the voter wrote in the name "Anderson" in the space for coroner, without further identifying for whom the vote was cast. The court concluded that the name, as written in, constituted an identifying and distinguishing mark, intentionally placed there by the voter. We cannot agree with that conclusion. We refer to the provisions of § 204.22(b) and (g), which provide:

"(b) When a voter has written the name of a person in the proper place, his vote shall be counted for that person whether he makes a mark (X) in the square opposite the blank line or not;

\* \* \* \* \*

"(g) When the judges can determine from a ballot the voter's choice for only a part of the officers, the ballot shall be counted for that party only."

The transcript of the testimony taken at the trial indicates that there are several Andersons residing in the area in which this ballot was cast, any of whom might have been a valid write-in candidate for coroner. We hold that the voter's failure to include either a surname or initials in front of this write-in is but a mere irregularity which would not invalidate the complete ballot, but only as to the contest in which the write-in was intended.

Ballot No. 13 appears to have been rejected on the ground that writing in the name "Jake" in the write-in space for coroner constituted an intentional distinguishing mark. Testimony in the record indicates that there is a person in the area nicknamed "Jake." We hold that ballot No. 13 was improperly rejected on the same basis as given for ballot No. 14.

Ballot No. 22, rejected by the trial court, contains the words "anyone else" in the write-in space for county surveyor and the surname "Phillips" written in the space for coroner. It appears that the voter, while not wishing to vote for the candidate for surveyor, would not or could not express another choice for that office. His failure to do so would not invalidate the remainder of the ballot. The extraneous words "anyone else" do not indicate an intent to identify or dis-

tinguish the ballot—only that the voter had no particular choice for that office. The reasoning by which ballots Nos. 13 and 14 were found valid is applicable here also and the rejection of ballot No. 22 is overruled.

It appears that the trial court rejected ballot No. 42 because the voter wrote in an unidentifiable name in the write-in space for coroner. It is impossible to identify the person intended. No crossmark was placed in the voting space, which, of course, is not necessary in a write-in. There is nothing to indicate that the person voting intentionally wrote this name in to distinguish or identify his ballot. Applying the reasoning given for overruling the trial court's decision as to ballots Nos. 13 and 14, we find this ballot valid also.

The court rejected ballot No. 110 because the voter had placed a crossmark where he did not want it and subsequently obliterated it. The ballot indicates that the voter cast his vote by uniform crossmarks. The rejection of ballot No. 110 is overruled under § 204.22(i).

The trial court rejected ballot No. 67 because the voter placed crossmarks both before and after several candidates' names. The voter may have been overly cautious but we see no reason to conclude that he was attempting to identify his ballot intentionally. The provisions of § 204.22(d) apply. Ballot No. 67 should have been accepted as valid, and its rejection is overruled.

It appears that the trial court rejected ballot No. 109 because the voter crossed out the letter "J" while attempting to write in the name of "Dr. Jurgens" for coroner. This is a mere obliteration. We are unable to spell out any statutory violation in connection with this ballot. See, § 204.22(b) and (i). The rejection of ballot No. 109 is overruled.

Ballot No. 99 was rejected by the trial court because the voter wrote in the name of "W. B. Schroeder" in the write-in space for coroner. Mr. Schroeder was also a candidate for sheriff on the same ballot. There is nothing in the statute which invalidates a ballot upon which a voter has voted for the same person for two different offices. There is nothing to indicate that the voter intended to identify his

ballot. See, § 204.22(b). The rejection of ballot No. 99 is over-ruled.

We feel that ballots Nos. 14, 13, and 42 should have been declared valid even though the voters failed to complete the names they intended to write in. Under the circumstances the write-ins cannot be counted. However, each of the voters made what appears to have been an honest attempt to register his choice. The write-ins are within the correct space and are irregular only in that the names intended are not identifiable. We feel that under § 204.22(g), quoted heretofore, all other votes on these ballots except that for coroner must be counted. We therefore hold that the rejection of ballots Nos. 14, 13, and 42 must be overruled.

The trial court rejected ballot No. 97 because the voter appears to have inadvertently placed an extraneous figure "C" in the write-in space for county surveyor. Whether the voter had begun a write-in and discontinued it, or simply dragged his pencil while voting in that bracket, is not evident. It is not a mark placed on the back or margin of the ballot or in such a manner that it would indicate an intention to distinguish or identify the ballot. The voter has uniformly marked his ballot in a clear and intelligent manner. We think the ballot acceptable under § 204.22. The rejection of ballot No. 97 is therefore overruled.

We affirm the trial court's acceptance of ballots Nos. 46, 50, 51, 119, 80, 83, 111, 118, 18, 65, 79, 103, 104, 113, 44, 57, 124, and 129, and affirm its rejection of ballots Nos. 5, 9, 15, 69, and 120.

We overrule the trial court's acceptance of ballots Nos. 2 and 19, and its rejection of ballots Nos. 8, 22, 29, 33, 48, 52, 74, 82, 95, 98, 116, 75, 76, 77, 14, 110, 67, 109, 13, 99, 42, and 97.

We therefore hold that the candidates are entitled to the votes listed below, making the final vote totals[2] read as follows:

---

[2]Not included in the final vote totals are 3 Morlock ballots, Nos. 26, 91, and 92; and 8 Fitzgerald ballots, Nos. 1, 3, 11, 30, 36, 78, 88, and 125, all of which were rejected by the district court and not challenged on this appeal. Not included are also 5 Morlock ballots, Nos. 5, 9, 15, 69, and 120, rejected by the trial court, the rejection having been affirmed on this appeal;

*Contestee Henry J. Morlock*[3]

| | |
|---|---|
| Votes as a result of recount and inspection | 4,281 |
| Votes added by stipulation of counsel | 9 |
| Unchallenged votes added by district court | 33 |
| Challenged votes added on this appeal | 30 |
| Unchallenged votes added on this appeal | 0 |
| | 4,353 |

*Contestant John M. Fitzgerald*[4]

| | |
|---|---|
| Votes as a result of recount and inspection | 4,296 |
| Votes added by stipulation of counsel | 9 |
| Unchallenged votes added by district court | 28 |
| Challenged votes added on this appeal | 9 |
| Unchallenged votes added on this appeal | 1 |
| | 4,343 |

In overruling the lower court's decision as to the ballots it held to contain invalidating, identifying, or distinguishing marks, we wish to reiterate the clear legislative mandate concerning the disenfranchisement of any voter. The construction of § 204.22 in Marshall v. Stepka, *supra,* is binding upon this court to the extent that a ballot may be held defective because of distinguishing characteristics *only* when it is *evident that the voter in casting his ballot intended thereby to identify it.*

---

and 2 Fitzgerald ballots, Nos. 2 and 19, held valid by the trial court but rejected on appeal to this court.

[3]The 33 "unchallenged votes added by the district court" are a portion of the original 42 votes found acceptable by the trial court. The remaining 9 of the original 42 are included in the 30 "challenged votes added on appeal." The other 21 votes of 30 "challenged votes added on appeal" are those Morlock ballots which the lower court rejected and this court accepted on appeal.

[4]The 28 "unchallenged votes added by the district court" are a portion of the original 37 ballots accepted by the district court. Of the 11 votes not accounted for, 9 are the "challenged votes added on this appeal," the remaining 2 being rejected as noted in footnote 2, *supra.*

No ballots other than those reviewed herein need be considered in view of the statements made by the parties' counsel in argument.

The only question before this court on an appeal from a legislative election contest is which party received the highest number of votes legally cast and is entitled to the certificate of election.

Since we have determined that Henry J. Morlock received 10 more votes than John M. Fitzgerald we declare Henry J. Morlock entitled to the certificate of election.

Should this contest be carried to the House of Representatives for trial the particular challenges and exceptions taken by the parties on this appeal will not carry over as controlling there.

The judgment of the trial court is reversed in part, with directions that the findings of fact and conclusions of law be amended to conform to the conclusions herein expressed and judgment be entered in favor of Morlock.

Affirmed in part; reversed in part.