JOHN V: SPERL v. MRS. LEONARD (AUDREY) WEGWERTH.

120 N. W. (2d) 355.

February 27, 1963—No. 38,978.

*Thuet & Todd,* for appellant.

*Grannis & Grannis,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of the District Court of Dakota

County declaring John V. Sperl to be the winner of an election contest for the office of county commissioner, district four of Dakota County. The appellant here is the opponent, Mrs. Leonard (Audrey) Wegwerth. It appears from the record that the county canvassing board declared that appellant Wegwerth was the winner of the election, having received 2,576 votes and the respondent Sperl having received 2,567 votes. Sperl commenced this proceeding to contest the results of the election. Inspectors were appointed and in due time filed their report showing that there were 5,019 uncontested ballots, 2,512 being cast for the appellant Wegwerth and 2,507 being cast for the respondent Sperl; and that there were 127 ballots certified to the court as contested ballots.

By its findings the district court determined that 16 of the contested ballots should not be counted for either party. Of the remaining 111 contested ballots, 59 were found to be votes for respondent Sperl and 52 were found to be votes for the appellant Wegwerth. The court found Sperl to be the winner by 2 votes, having received 2,566 votes while Wegwerth received 2,564 votes. The county auditor of Dakota County was directed to issue a certificate of election declaring Sperl to have been duly elected to the office of county commissioner.

■ The first issue raised on this appeal involves ballots which the court disallowed because the voter failed to use a uniform mark in marking his ballot. It appears from an examination of these particular ballots, which are marked exhibits A-1, A-5, B-17, B-32, C-51, C-59, D-76, D-77, D-97, and D-103, that the voter in each instance used both crossmarks and check marks in indicating his choices.[1] The trial court determined that these votes were disqualified under the provisions of Minn. St. 204.22(h), which provides:

"When a voter uniformly uses a mark other than (X) in marking his ballot, clearly indicating his intent to mark against a name, and does not use (X) anywhere else on the ballot his vote shall be counted for each candidate so marked."

---

[1] Six of these votes were cast for Wegwerth and four for Sperl.

Appellant concedes that the language of the statute seems clear and both parties agree that the cases interpreting this section have held that the use of two or more distinct markings renders the ballot illegal. Pye v. Hanzel, 200 Minn. 135, 273 N. W. 611; Aura v. Brandt, 211 Minn. 281, 1 N. W. (2d) 381; Fitzgerald v. Morlock, 264 Minn. 520, 120 N. W. (2d) 339. However, the counsel for appellant ably argues that, even though there is a variation in the markings, the intention of the voter is clearly indicated and that the variance should not be held to constitute such an identification of these ballots as to disqualify them. The policy which has given rise to the statute, and the decisions which have interpreted it, seem to be predicated upon the assumption that the act of changing marks on a ballot is intentional and for no other reason than to identify the ballot and differs from the act of making careless or negligent marks which do not identify the ballot. We must agree that the trial court was correct in his determination. Although the purpose of the statute may be directed at preventing identification, a variation in marking a ballot can also create uncertainty as to the voter's choice. When the required X mark is used in voting for some candidates and check marks for others, it is difficult to determine whether the check marks were meant to be a vote for the candidate or simply an indication of the voter's decision not to cast a vote in that contest. The plain words of the statute, however, require that the entire ballot be rejected. Regardless of what we may think as to the reasonableness of the rule, we must take the law as we find it and are not at liberty to change the rule at this point. In discussing a similar request for a rule change, we said in Murray v. Floyd, 216 Minn. 69, 73, 11 N. W. (2d) 780, 784, that we are not free to change at will our prior rulings construing present election laws. Section 204.22(h) is almost identical to the statute which it replaced, Minn. St. 1957, § 206.50(7). The rule is well recognized that reenactment of a prior statute presumptively constitutes an adoption of the prior construction of a reenacted statute, and as we observed in the Murray case (216 Minn. 73, 11 N. W. [2d] 784), "the rule * * * applies with persuasive force with respect to these particular statutes." If a change is to be made in the law to permit a voter to use

two distinct marks in expressing his vote on a ballot, it should be left to the legislature to make it.

■ The essential issues which confront us on this appeal are fixed in the following statement from the appellant's brief:

"However, if the previous decisions of the court are to remain in force, it is the contention of the appellant that ballot B-20 cast for appellant and ballots A-9, A-11, B-25, B-27, B-28, B-30, D-94, D-96, and D-107 cast for the respondent should be disallowed. It is the further position of this appellant that ballots D-83 cast for the appellant and ballots B-21, C-64, C-66, C-70, D-102 and D-104 cast for the respondent should be disallowed on the basis that there is a lack of clear intent as to [the candidate for] whom the voter intended to cast his ballot. It is the further position of this appellant that ballots C-73 and D-100 counted for respondent should be disallowed on the grounds that they contain identifying marks not properly obliterated in accordance with the statute and consequently are invalid votes. Finally, it is the position of the appellant that B-42 should be disallowed on the grounds that there is no clear evidence to establish the attachment of scotch tape to the ballot and as such renders the ballot capable of identification."

We have carefully examined the challenged ballots and will discuss them in appropriate categories.

Exhibits A-9, A-11, B-30, D-94, D-96, and D-107 are votes for Sperl. The appellant argues that these ballots should not be allowed because the X mark in front of the candidate's name may be interpreted to be a Y or an asterisk-like mark. Although the same objection applies to ballot B-20, which was cast for appellant Wegwerth, she argues that that vote should be disqualified for the same reason. The trial court was of the view that the mark on each of these ballots was really an incompleted X. Examination of the ballots shows that on each the intersecting point of the mark was above the line and in the box in front of the candidate's name, sufficiently indicating the voter's intent to express a choice for the candidate. We think the trial court correctly allowed these votes. It is well recognized that there

is no infallible rule as to how a crossmark shall be executed. In Pennington v. Hare, 60 Minn. 146, 149, 62 N. W. 116, 118, we said:

"* * * any mark, however crude and imperfect in form, if it is apparent that it was honestly intended as a cross mark, and for nothing else, must be given effect as such; * * *."

Ballot B-25 was cast for respondent Sperl. On this ballot the voter uniformly used check marks in indicating his choice. These check marks started out as a short downstroke with a longer diagonal upstroke, and as they proceeded towards the bottom of the ballot the short stroke became gradually less pronounced until at the point where the voter marked his choice for the office of county commissioner he used what appears to be a diagonal or slash-type mark. We agree with the trial court that the voter uniformly used a check mark, although it appears on the lower part of the ballot that he executed this mark in a hurried or careless manner. It seems to us that the court, in harmony with the spirit of the statute and our decision in Marshall v. Stepka, 259 Minn. 553, 108 N. W. (2d) 614, gave effect to the principle that a ballot should not be rejected for any technical error where the choice of the voter can be ascertained therefrom. Minn. St. 204.22 states: "* * * All ballots shall be counted for the persons for whom they were intended, so far as the intent can be clearly ascertained from the ballots themselves," subject, of course, to the rules for determining intent contained in paragraphs (a) to (l), inclusive.

Ballot B-27 is a vote for Sperl. The voting mark appears to be in the outline of a T, but from a careful examination of the ballot, we conclude that the trial court, by comparison with other marks on the ballot, could reasonably determine that the mark was an X, carelessly or imperfectly executed.

Ballot B-28 was cast for Sperl. In marking his ballot, the voter uniformly used a check mark. In the line above the name of the unopposed candidate for the office of county auditor the voter used a check mark and then drew a line through it, as if to indicate a mistake. In the box below is a clear mark for the unopposed candidate. Although appellant claims that the ballot should be disallowed as one on which different marks were used, we think the trial court properly

concluded that it would be overly technical to disallow this ballot because of a stray or accidental pencil mark above a clearly indicated voting mark.

Ballots D-83, B-21, C-64, C-66, C-70, D-102, and D-104 are ballots which appellant asserts should be disallowed because the crossmarks are so placed that it is impossible to tell for whom the voters intended to cast their ballots. In considering the merits of this objection, we must keep in mind § 204.22(d), which provides:

"When a mark (X) is made out of its proper place, but on or so near a name or space as to indicate clearly that the voter intended to mark the name, the vote shall be counted as so intended."

We have carefully examined the challenged ballots. D-83 is a ballot allowed for Wegwerth and the remaining ballots were allowed for Sperl. While on certain ballots the mark was placed on or near the bottom of the line and the crossmarks in some instances extended into the box of the opposing candidate, we think the trial court fairly concluded from an examination of these ballots that each should be allowed. The trial court in his memorandum properly observed:

"* * * In each of these ballots the Court has found that the intention to cast a vote for the person for whom the Court counted it is clear, and that to fail to count any of said ballots would tend to disenfranchise a voter on a technical ground."[2]

Ballot C-73 was allowed for the respondent Sperl. The objection to it is that there is a diagonal mark below the X and in front of the place provided for candidate Wegwerth. From an examination of the ballot, we conclude that the trial court was properly of the view, as expressed in Bloedel v. Cromwell, 104 Minn. 487, 489, 116 N. W. 947, 948, that—

"* * * Mere irregularities in the marking of ballots, such as neither create uncertainty as to the voter's choice nor serve as distinguishing signs, violative of secrecy, are not cause for rejecting ballots."

---

[2] On ballot C-66 the incomplete X takes the form of a V, and on ballot D-102 the crossmark was placed on the line behind the name of the candidate Sperl.

The appearance of marks which the trial court might reasonably consider to be tentative or accidental should not destroy the ballot.

Ballot D-100 was allowed for Sperl. This vote is objected to because there is a short, rather faint mark apparently made with a ballpoint pen before appellant's name, below which is an X clearly placed in the box provided on the ballot for a vote for Sperl. Here again we think the trial court properly allowed the vote. What we have said with reference to ballot C-73 applies here.

Ballot B-42 is a vote cast for Sperl. This ballot is contested on the ground that it was torn and repaired by scotch tape. This was an absent voter's ballot and could have been torn by a letter opener when the envelope in which it was mailed was opened. The court allowed it on the theory that it was a mutilated ballot which was presumed to have been torn after it was received and counted by the election officers.[3] In Aura v. Brandt, 211 Minn. 281, 1 N. W. (2d) 381, we considered the validity of two ballots, one torn all the way across the top where it was glued to a pad and the other torn all the way down the left side. We held that these ballots should not have been rejected on the ground that they contained a distinguishing mark in the absence of proof that the tears were made by the voters. We are of the view that the trial court could reasonably assume that the tearing was done by election judges in the process of counting the ballot and that it was properly allowed.

Since the trial court ruled correctly on each of the questioned ballots, the judgment must be affirmed.

---

[3]Hanson v. Emanuel, 210 Minn. 271, 297 N. W. 749.