# JAMES A. GANSKE v. INDEPENDENT SCHOOL DISTRICT NO. 84 AND OTHERS.

136 N. W. (2d) 405.

July 9, 1965—No. 39,820.

*Carl A. Jensen,* for appellants.
*Berens, Rodenberg & O'Connor,* for respondent.

OTIS, JUSTICE.

This is an appeal from a judgment holding a school bond election invalid and setting aside the canvassing board's certification that the proponents had prevailed.

On October 20, 1964, the School Board of Independent School District No. 84, which includes the city of Sleepy Eye, held an election to determine whether to issue bonds in the sum of $485,000 for building an addition to the district's high school. The canvassing board certified 712 votes in favor of the bond issue and 710 votes against it. Respondent contested the election. The trial court found that two of the "YES" votes were invalid, resulting in a tie, and held that other irregularities cast such doubt on the outcome that the election should be set aside.

■ At the outset we are confronted with the question of what effect Minn. St. 200.02, subd. 1, has on the canons of construction embodied in § 204.22 governing general elections. Section 200.02, subd. 1, provides:

"The word 'election' means any election *except those held in any school district unless otherwise specifically provided by law,* at which the electors of the state or any subdivision thereof nominate or choose by ballot public officials or decide any public question lawfully submitted to them." (Italics supplied.)

A number of decisions of this court have recently construed and applied the statutes applicable to general elections, and we are of the opinion they embody rules of construction which, apart from statute, should govern the issues in the case now before us.

■ In determining the validity of the two "YES" votes, contestant's exhibits 6E and 6F, which the trial court held should not have been counted, the question is whether they contain distinguishing characteristics which make it evident that the voters intended to identify their ballots[1] in violation of Minn. St. 123.32, subd. 5, requiring voting by

---

[1]Minn. St. 204.22(k).

secret ballot in school district elections. Each ballot contains a cross mark in pencil in the box designated for "YES" and each contains a faint ballpoint mark resembling the figure "3" near the word "NO" but outside of the box adjacent to it. The election officials' initials on the back of the ballot are also marked with a ballpoint pen. There is no other evidence in the record of the intention of the voters. It seems likely that the marks were made by someone other than the voter and that they were casually and inadvertently placed, undoubtedly by the election judges in the counting process. Be that as it may, we hold as a matter of law that the contestant has failed to sustain his burden of proving that the marks were made by the voters with the intention of thereby identifying their ballots. Therefore the two "YES" votes represented by exhibits 6E and 6F are reinstated. Green v. Independent Consol. School Dist. No. 1, 252 Minn. 36, 42, 89 N. W. (2d) 12, 16; Fitzgerald v. Morlock, 264 Minn. 520, 535, 120 N. W. (2d) 339, 352; Marshall v. Stepka, 259 Minn. 553, 558, 108 N. W. (2d) 614, 618; Sperl v. Wegwerth, 265 Minn. 47, 53, 120 N. W. (2d) 355, 359.

■ The trial court held that a number of contested "NO" votes were valid, including contestees' exhibit 5A. That ballot contained an X mark across the word "NO" with no other mark, either in the adjacent box or elsewhere, to indicate the voter's intention. Although, as we have indicated, Minn. St. 204.22 does not expressly apply to this election, we note that paragraph (d) of the statute provides:

"When a mark (X) is made out of its proper place, but on or so near a name or space as to indicate clearly that the voter intended to mark the name, the vote shall be counted as so intended."

With the statute as a guide, contestant argues that the cross on the word "NO" should be treated as a "NO" vote. We do not agree. It can be argued with equal force that the voter intended to obliterate the word "NO" and adopted this method of indicating his intent to cast a "YES" vote. Under the circumstances, we hold that the intention of the voter is ambiguous at best and that the ballot should not have been counted either for or against the question. Hence, the reinstatement of two "YES" votes and the rejection of one "NO" vote result in a total of 712 "YES," in favor, and 709 "NO," against, the bond issue.

■ A combination of minor irregularities prompted the trial court to hold that the election should be set aside because the outcome was in doubt. The court found that two persons had voted in the election who were not legally qualified to do so. One such voter took the stand without asserting his right against self-incrimination, but upon the trial court's ruling that the secrecy of his ballot was a privilege he could assert or waive he was not required to disclose how he voted. In our opinion, it was error to sustain the objection. Subject to the right against self-incrimination, no privilege obtains with respect to one who has voted illegally. Hanson v. Village of Adrian, 126 Minn. 298, 302, 148 N. W. 276, 277. The second illegal voter was not called. Since the contestant had the burden of proof and interposed an objection in one instance and failed to produce the witness in the other, we are of the opinion that the irregularity is not one which contestant is now at liberty to invoke as a ground for contesting the election.

■ The court found that the number of ballots cast exceeded by two the number of persons voting at the election. One of the ballots was blank. Since we conclude that the net result of the voting has given the "YES" votes a majority of three, even if we assume that one person illegally cast a second "YES" ballot and such vote can therefore not be counted, the result of the election would not be changed.

■ Three persons who applied for absentee ballots failed to receive them. All of them testified without objection that they were in favor of the bond issue and would have voted "YES" had they been afforded the opportunity.[2] Under these circumstances, we hold that the irregularity was not one which affected the outcome or tainted the validity of the election.

■ The trial court found that 41 absentee ballots did not bear the initials of two of the election judges as required by Minn. St. 123.32, subd. 5, but held that the omission did not violate the secret ballot requirement.

■ The court noted that the ballots were counted in the office of the superintendent of the school district in the presence of persons

---

[2]It seems clear that this testimony was inadmissible under our rule in Pennington v. Hare, 60 Minn. 146, 148, 62 N. W. 116, 117.

other than the duly appointed and qualified election judges, and observed that this was an undesirable but not prohibited practice which did not have a persuasive bearing on the court's decision.

Although contestant concedes that none of the enumerated irregularities is in itself significant, he contends that the cumulative effect supports the court's finding that the election as a whole was invalid, citing In re Contest of Election of Vetsch, 245 Minn. 229, 71 N. W. (2d) 652. There we set aside an election characterized by widespread violations of the election laws, including the disappearance of 59 ballots, and stated (245 Minn. 239, 71 N. W. [2d] 659):

"* * * The election laws were violated from the very start of the election in La Crescent village. And in addition the violations were numerous, viz., improper appointment of the election board; improper handling of ballots by the village clerk; unauthorized issuance of absentee ballots; failure to take, administer, and indicate proper oaths; unauthorized and ineligible persons filling in as judges and clerks without indication thereof; the intermixing of clerk and judge functions; failure to count ballots before issuing receipts therefor; and inadequate maintenance of the election register. The people conducting the election appeared to be completely unaware of the laws governing elections, and what is more, they made no effort whatsoever to become acquainted with them."

We concluded by holding (245 Minn. 241, 71 N. W. [2d] 660):

"* * * Such a wholesale flouting of the law cannot be tolerated when the result is to cast doubt and suspicion upon the election and impeach the integrity of the vote."[3]

In our opinion the Vetsch case has no application to the circumstances of the election under consideration. Except for one extraneous ballot and two unqualified voters, none of the irregularities in the instant case reveals any impropriety affecting the outcome. Since the contestant prevented a disclosure of whether one of the illegal voters had cast his ballot for or against the bond issue and failed to call the other,

---

[3]See, also, Green v. Independent Consol. School Dist. No. 1, 252 Minn. 36, 44, 89 N. W. (2d) 12, 18.

he is not now in a position to exploit the court's ruling by suggesting that those votes might have changed the result. We therefore conclude that the school bond election of October 20, 1964, resulted in 712 votes in favor of the issue and 709 votes against it.

Reversed.